IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**MUELLER SPORTS MEDICINE, INC.,**
a Wisconsin corporation,

        Plaintiff,

v.                                           Case No. 20-CV-615

**KT HEALTH, LLC**,
a Delaware limited liability company,

        Defendant.

## COMPLAINT

Plaintiff, Mueller Sports Medicine, Inc. ("Mueller"), brings this complaint ("Complaint")

against Defendant KT Health, LLC ("KT Health") and alleges as follows:

### NATURE OF THE CASE

1.      This is an action for Declaratory Judgment and other relief brought under the

Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  A substantial actual controversy

exists between the parties, based on actions taken by KT Health in the marketplace and

communications between the parties which include a threat of litigation by KT Health against

Mueller.  Mueller seeks a declaration that it has not infringed, and is not infringing, any valid

trade dress or patent rights of KT Health due to Mueller's marketing and sale of Mueller's

kinesiology tape products.  Mueller further seeks a declaration that KT Health's asserted trade

dress rights are invalid because the trade dress is not distinctive, lacks secondary meaning, and is

functional.  Additionally, KT Health's conduct violated Wisconsin's patent notification statute,

and intentionally interferes with a contractual relationship between Mueller and retailer Walmart

which is one of the numerous retailers that sells products made by both parties.

2.      The products and packaging at issue in this case consist of Mueller's

TYPHOON® Elite Kinesiology Tape, KT Health's KT TAPE PRO® kinesiology tape, and the

packaging for each product.  The applicable products and packaging appear below, with

Mueller's on the left and KT Health's on the right:



## THE PARTIES

3.    Mueller is a corporation organized under the laws of the State of Wisconsin, with a principal place of business located at One Quench Drive, Post Office Box 99, Prairie du Sac, Wisconsin 53578.  Mueller is in the business of, among other things, making and selling various sports medicine products, including kinesiology tape.

4.    KT Health, upon information and belief, is a limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 584 East 1100 South, Suite 4, American Fork, Utah 84003.  KT Health's registered agent is The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

5.    Mueller and KT Health are two of many competitors whose business includes making and selling sports medicine products, including kinesiology tape, that are sold online and in retail stores including Walmart.

6.    This action arises from KT Health's conduct in the marketplace including its allegations that Mueller is infringing KT Health's unregistered purported trade dress rights and KT Health's issued U.S. Patent No. 9,308,115 (the '115 Patent) and threats to sue Mueller based on these allegations.

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, and 2201.

8.    This Court has personal jurisdiction over KT Health.  KT Health advertises, distributes, and sells products to residents of the State of Wisconsin and in this judicial district. KT Health sells and continues to sell its products through its online store and at retail stores in

3

Wisconsin and in this judicial district, and KT's allegations of trade dress infringement and patent infringement are directed to those same products. Thus, KT Health is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Wisconsin long arm statute, resulting from KT Health's business contacts in this forum. Further, at least a portion of the dispute alleged in this Complaint occurred in the State of Wisconsin and in this judicial district, and upon information and belief KT Health regularly conducts and solicits business, engages in other persistent courses of conduct, and derives substantial revenue from sales made to individuals in Wisconsin and in this judicial district.

9.      KT Health aggressively pursues competitors and retailers that sell its competitors' products, including by alleging trade dress infringement in connection with kinesiology tape products and packaging. On or about June 12, 2010, Mueller received a cease and desist letter from KT Health (the "Cease and Desist Letter"). Attached as **Exhibit A** is a true and correct copy of the Cease and Desist Letter.

10.     KT Health recently filed two federal lawsuits: (1) *KT Health, LLC v. Walmart Inc.*, No. 2:20-cv-00366-DAK (D. Utah 2020) (the "Walmart Action"); and (2) *KT Health, LLC v. The Kroger Co.*, Case 2:19-cv-00558-PMW (D. Utah 2019) (the "Kroger Action"). In both actions, KT Health asserted claims for trade dress infringement, trademark infringement, unfair competition, and deceptive trade practices, based on allegations similar to those raised by KT Health against Mueller in the Cease and Desist Letter. Attached as **Exhibit B** is a true and correct copy of KT Health's complaint in the Walmart action, and attached as **Exhibit C** is a true and correct copy of KT Health's complaint in the Kroger Action.

11.     Upon information and belief, KT Health's primary motivation for its aggressive allegations of trade dress infringement is to interfere with Mueller's ability of its competitors –

4

including Mueller – to offer competing products at retail stores including Walmart and Kroger. To that end, KT Health asserted in the Walmart Action the very same purported intellectual property rights at issue in the present action; the Walmart Action is currently pending.

12.     Upon information and belief, the main purpose of KT Health's lawsuit against Walmart in conjunction with the Cease and Desist Letter to Mueller is to interfere with the contractual relationship between Mueller and Walmart relating to Mueller's products that compete with KT Health, including Mueller's TYPHOON® Elite Kinesiology Therapeutic Tape products.  (*See* **Exhibit B**, Complaint in the Walmart Action, at ¶¶ 41-50) (discussing the "Accused Products").  Because Walmart engages in significant distribution and sales of such products in Wisconsin and this judicial district, KT Health's enforcement efforts and interference with the contractual relationship between Mueller and Walmart have a direct impact on commerce in this State and judicial district, and on Mueller's business activities in this State and judicial district.

13.     Upon information and belief, Walmart recently removed KT Health's kinesiology tape products from the pharmacy department shelves in Walmart stores and began selling Mueller's kinesiology tape products instead.  Shortly thereafter, KT Health commenced the Walmart Action and sent the Cease and Desist Letter to Mueller.

14.     In the Walmart Action, KT Health alleges that Walmart is "unlawfully profiting from KT Health's success and goodwill associated with KT Tape products by marketing and selling kinesiology tape in packaging that incorporates the KT Trade Dress, the KT Trademark, and other words or devices that are confusingly similar to or are a colorable imitation of the KT Trade Dress and the KT Trademark (hereinafter, the 'Accused Products')."  *See* **Exhibit B**,

Complaint in the Walmart Action, at ¶ 41).  The Complaint in the Walmart Action does not contain an exhaustive list of products that constitute the "Accused Products."

15.     In light of KT Health's conduct, an actual, substantial controversy exists between Mueller and KT Health regarding, at a minimum, (i) whether KT Health's Cease and Desist Letter accurately identifies KT Health's intellectual property rights; (ii) whether Mueller is infringing any actual trade dress or patent right of KT Health; and (iii) whether KT Health's conduct intentionally interfered with the contractual rights between Mueller and Walmart.

16.     Additionally, this case is between diverse parties for a dispute with an amount in controversy exceeding $75,000, exclusive of interest and costs, and the parties are citizens of different states.  Mueller is a citizen of Wisconsin and KT Health is a citizen of Utah and Delaware.

17.     Venue properly lies in the Western District of Wisconsin, including pursuant to 28 U.S.C. § 1391.

18.     This Court may declare rights and other legal relations of the parties in this case under 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, because an actual and justiciable controversy exists concerning the rights of, and legal relations between, Mueller and KT Health.

## FACTUAL BACKGROUND

### I.     The Kinesiology Tape Market

19.     This action involves a dispute between Mueller and KT Health regarding KT Health's conduct in the marketplace relating to the packaging trade dress and product trade dress used by Mueller to sell its TYPHOON® brand kinesiology therapeutic tape.

20.     Kinesiology therapeutic tape is a generic term for a type of elastic therapeutic tape used to treat pain and disability from athletic injuries and other physical ailments. Substitute generic terms for "kinesiology therapeutic tape" include "kinesiology tape," "elastic therapeutic tape," "kinesio tape," "k-tape," and "KT" (which is an abbreviation of or acronym for "kinesiology tape" and/or "kinesiology therapeutic").

21.     Upon information and belief, kinesiology tape was first developed and sold in the 1970s by Japanese chiropractor Kenzo Kase, who is the founder and President of Kinesio brand kinesiology tape. Large companies including Walmart, Kroger, and RockTape sell their own brands of kinesiology tape, along with many other competitor companies.

22.     KT Health is a competitor of Mueller in the kinesiology tape market.

**II.     Mueller's TYPHOON® Elite Kinesiology Therapeutic Tape**

23.     Mueller designs, manufactures, sells, and distributes kinesiology tape – including its TYPHOON® brand tape – nationwide.

24.     Mueller sells its TYPHOON® Elite Kinesiology Therapeutic Tape in the colors black and beige in the following packaging (the "Mueller Design") which prominently features the endorsement of professional soccer player Alex Morgan:

| TYPHOON® Elite Kinesiology Therapeutic Tape – Beige | TYPHOON® Elite Kinesiology Therapeutic Tape – Black |
|---|---|



25.    The top back flap of the packaging for Mueller TYPHOON® Elite Kinesiology

Tape prominently displays (1) Mueller's registered MUELLER standard character trademark, (2)

Mueller's registered  design mark ("Mueller's Design Mark"), consisting of an

image of a foot wrapped in athletic tape, and (3) Mueller's registered TYPHOON standard

character trademark.

26.    Mueller owns U.S. Trademark Registration Nos. 3698102, 3695168, and 3695162

for the MUELLER standard character mark in connection with Mueller's products.  These three

registrations are incontestable and claim a first use in commerce date of at least as early as

January 1, 1975.

27.    Mueller owns U.S. Trademark Registration No. 3695173 for Mueller's Design

Mark, which is incontestable and claims a first use in commerce date of at least as early as

March 30, 1984.

28.    Mueller owns U.S. Trademark Registration No. 6071218 for the TYPHOON

mark, which claims a first use in commerce date of at least as early as February 4, 2020.

29.    The primary color of the packaging for Mueller TYPHOON® Elite Kinesiology

Tape is red.  The packaging also includes black, white, and yellow text, a white light gradient

behind the prominent photo of professional soccer player Alex Morgan, and a small color square

on the upper-right portion of the top back flap denoting the color of the tape itself.  Alex

Morgan's signature denoting her endorsement of the Mueller product appears in the upper-right

corner of the front face of the packaging.  The packaging does not contain the color orange.

9

30.     The end of each strip of Mueller TYPHOON® Elite Kinesiology Tape contains (1) the MUELLER standard character trademark, and (2) Mueller's Design Mark.

31.     Each container of Mueller TYPHOON® Elite Kinesiology Tape displays in white font (1) the MUELLER standard character trademark, and (2) Mueller's Design Mark.

32.     The lid for each container of Mueller TYPHOON® Elite Kinesiology Tape contains (1) the MUELLER standard character trademark, and (2) Mueller's Design Mark.

33.     The color of the lid and bottom of each Mueller TYPHOON® Elite Kinesiology Tape container matches the color of the tape itself.  In other words, Mueller's black TYPHOON® Elite Kinesiology Tape is sold in a container with a black lid and black bottom, and Mueller's beige TYPHOON® Elite Kinesiology Tape is sold in a container with a beige lid and beige bottom.

### III.    KT Health's Sales, Products, and Packaging

34.     KT Health was founded in 2008.  KT Health designs, manufactures, sells, and distributes kinesiology tape nationwide, including in this judicial district.  KT Health sells kinesiology tape under the KT TAPE trademark, for which it received U.S. Trademark Registration Nos. 3723455 and 4679985.

35.     KT Health also owns U.S. Trademark Registration No. 4679986 for the design mark (shown below), for which KT Health agreed to the following express disclaimer:  "No claim is made to the exclusive right to use 'TAPE KINESIOLOGY THERAPEUTIC TAPE' apart from the mark as shown."  The reason for this disclaimer is because the term "kinesiology therapeutic tape" is generic for the products at issue.



36.     KT Health advertises, markets, and sells its kinesiology tape products to consumers within the State of Wisconsin and in this judicial district, including at stores in this judicial district including at a minimum:  Walmart, Walgreens, CVS, Target, Dick's Sporting Goods, Dunham's Sports, The Vitamin Shoppe, Endurance House, The Tennis Shop, Trail This, Rutabaga Paddlesports, Rocket Bikes, REI, Melt, Hibbett Sports, Fleet Feet Sports, and All Season Runner.  Attached as **Exhibit D** is a true and correct printout of June 30, 2020 search results from the store locator feature on KT Health's website, showing a map and list of stores selling KT Health's kinesiology tape products in this judicial district.

37.     KT Health also advertises, markets, and sells its kinesiology tape products nationwide through its online store at kttape.com (the "KT Health Online Store").

38.     The KT Health Online Store allows consumers to order KT Health's products, including its kinesiology tape products, and have the products shipped to their homes in the State of Wisconsin and this judicial district.

39.     KT Health offers a variety of kinesiology tape products in a variety of colors and which come in a wide variety of packaging designs, examples of which are pictured below:

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO® Jet Black |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO® Rage Red |
|  | KT TAPE PRO® Sonic Blue |
|  | KT TAPE PRO® Stealth Beige |
|  | KT TAPE PRO® Epic Purple |
|  | KT TAPE PRO® Hero Pink |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO® Blaze Orange |
|  | KT TAPE PRO® Winner Green |
|  | KT TAPE PRO® Laser Blue |
|  | KT TAPE PRO EXTREME® Jet Black |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO EXTREME® Titan Tan |
|  | KT TAPE® Original Cotton Red |
|  | KT TAPE® Original Cotton Pink |
|  | KT TAPE® Original Cotton Beige |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE® Original Cotton Black |
|  | KT TAPE® Original Cotton Blue |
|  | KT TAPE® Original Cotton Navy |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE® Original Cotton Purple |
|  | KT TAPE® Original Cotton Lime |
|  | KT TAPE PRO® Limited Edition Blue Crystal |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO® Limited Edition Digi Camo Tan |
|  | KT TAPE PRO® Limited Edition Meb [Keflezighi] Edition |
|  | KT TAPE PRO® Limited Edition Pink Polka Dot |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO® Limited Edition Realtree Xtra Camo |
|  | KT TAPE PRO EXTREME® Tone Series Tempo Taupe |
|  | KT TAPE PRO EXTREME® Tone Series Warm-up Walnut |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO EXTREME® Tone Series Cameo Caramel |
|  | KT TAPE PRO EXTREME® Tone Series Marquee Mocha |
|  | KT TAPE® Gentle Tape |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE® PRO USA |
|  | KT TAPE PRO® USA Rose Lavelle Edition Jet Black |
|  | KT TAPE PRO® USA Rose Lavelle Edition Rage Red |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO® USA Rose Lavelle Edition Sonic Blue |
|  | KT TAPE PRO-X® |
|  | KT RECOVERY+ RECOVERY PATCH® |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO 125 FT Uncut Green |
|  | KT TAPE PRO 125 FT Uncut Red |
|  | KT TAPE PRO 125 FT Uncut Pink |
|  | KT TAPE PRO 125 FT Uncut Beige |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO 125 FT Uncut Black |
|  | KT TAPE PRO 125 FT Uncut Blue |
|  | KT TAPE PRO 125 FT Uncut Purple |
|  | KT TAPE PRO 125 FT Uncut Yellow |

| KT Health Product Pictured | Name of KT Health Product Pictured |
|---|---|
|  | KT TAPE PRO 125 FT Uncut Laser Blue |
|  | KT TAPE Cotton 125 FT Uncut Black |
|  | KT TAPE PRO Extreme 150 Strip 10" Precut |
|  | KT TAPE PRO Extreme 150 Strip 10" Precut |

40.     KT Health sells kinesiology tape products in at least 21 different colors including

the following:  black, red, blue, beige, purple, orange, green, tan, navy, lime, yellow, gray, taupe,

walnut, caramel, mocha, pink with white polka dots, black with white stripes, a patterned "Limited Edition Blue," a patterned "Limited Edition Digi Camo[uflage],"and a patterned "Limited Edition Realtree Xtra Camo[uflage]."

41.    KT Health sells kinesiology tape in a variety of different colored packages, including the following:  Gray, black, yellow, blue, purple, green, camouflage, pink with white polka dots, and multiple shades of orange.

42.    KT Health sells kinesiology tape in a variety of different shaped packages.

43.    KT Health sells kinesiology tape in packages with a variety of different dimensions and sizes.

44.    KT Health sells kinesiology tape featuring a variety of different professional athletes on the front of the various packages.  Athletes featured on KT Health kinesiology tape packaging include males and females pictured in a variety of different poses and with a variety of different hairstyles and who play a variety of different sports.

45.    KT Health sells kinesiology tape containing different text and symbols on the tape itself.  KT Health sells kinesiology tape products containing the following different text and symbols:  the letters "KT," the letters "USA," an American flag, the Olympic rings, and white stripes.

46.    KT Health Lacks trade dress rights in the physical structure of its product packaging because that structure is legally functional.  Only a finite number of ways exist to design a box and packaging to contain a role of athletic tape, and KT Health cannot perpetually monopolize one of only a limited number of such designs.  These boxes are available from a variety of foreign and domestic box manufacturers, who sell boxes in a variety of standard forms to a variety of foreign and domestic producers of kinesiology tape.  The size of the boxes at issue

functions to accommodate a standard size role of kinesiology tape. Box cut-outs function to

show the kinesiology tape inside the box. The box flaps function to allow the box to open and fit

on standard retail store shelving. The cylindrical shape kinesiology tape container functions to

allow the user to protect the role of kinesiology tape after it has been removed from the box. The

combination of these elements does not give rise to protectable trade dress where the

combination is simply one of the most efficient ways to combine legally functional features.

47.    In the '115 Patent, KT Health claimed rounded corners as a functional feature of

kinesiology tape.

48.    One of the dependent claims of the '115 Patent expressly limits the invention to

"rounded corners of each individual strip." '115 Patent (Claim 9). These rounded corners of the

invention are purportedly functional:

> FIG. 1 also shows that the corner of the kinesiology tape 100 can include a rounded
> corner 115. In at least one implementation, a rounded corner 115 can prevent fraying
> during application. Additionally or alternatively, a rounded corner 115 can reduce the
> chance of accidental detachment during use of the kinesiology tape 100. For example, a
> rounded corner 115 is much less likely than a square corner to Snag on other materials,
> such as the user's clothing, that might detach the kinesiology tape 100 during use.
> Additionally or alternatively, a rounded 115 corner can provided [sic] more comfort to
> the user, as a rounded corner 115 does not have a sharp corner that can poke the user or
> otherwise cause discomfort.

*Id.* at 4:11-22. Attached as **Exhibit E** is a true and correct copy of the '115 Patent.

49.    Because the rounded corners of KT Health's kinesiology tape are functional, the

rounded corners cannot constitute trade dress or an element of trade dress.

50.    Kinesio previously owned U.S. Patent No. 5,861,348 (the "'348 Patent") for a

body-adhesive tape with a smooth sinusoid pattern on the adhesive portion of the tape. The '348

Patent expired on July 23, 2016, resulting in the sinusoidal pattern technology reverting to the

public domain. Attached as **Exhibit F** is a true and correct copy of the '348 Patent.

26

#### IV.    KT Health's Patent:  U.S. Patent No. 9,308,115 (the '115 Patent")

51.    KT Health's '115 Patent is titled "Body-adhesive Kinesiology Tape."  In the Background of the Invention section of the '115 Patent, the inventors describe the prior art and the usefulness of kinesiology tape. Among other things, kinesiology tape is useful in therapy to reduce:

> [S]oreness in overused and injured muscles and in rehabilitation to accelerate recovery. The tape can have a lifting effect on the skin which can reduce swelling and inflammation by improving circulation and reduce pain by taking pressure off pain receptors.

*Id.* at 1:17-22.

52.    The patented invention is allegedly an improvement in the art because it allows for "multiple useful conformations without the need for custom cutting and fitting."  *Id.* at 2:3-6.

53.    One of the embodiments of the '115 Patent describes the invention as follows:

> The body-adhesive kinesiology tape includes a strip of kinesiology tape  . . . The body-adhesive kinesiology tape also includes a longitudinal cut in the strip of kinesiology tape extending from the first end to a pre-determined distance from the second end and adhesive on a first surface of the strip of kinesiology tape.  . . .  The backing material is configured to cover the adhesive and protect the adhesive from drying until a user is ready to apply the strip of kinesiology tape to the human body.

*Id.* at 2:18-33. The '115 Patent is depicted in Figs. 2 and 3B, below:

27



54.     The '115 Patent ends with 17 claims, all directed to varying embodiments of the patented invention. The following claims 1, 6, 15, and 17 are independent claims; claims 2-5, 7-14, and 16 are dependent claims. Claim 1 is illustrative of the '115 Patent:

Body-adhesive kinesiology tape, the body-adhesive kinesiology tape comprising individual strips of body-adhesive kinesiology tape in which a user need not cut the kinesiology tape before using, the body-adhesive kinesiology tape comprising:

a strip of pre-cut kinesiology tape, the strip of pre-cut kinesiology tape resistant to tearing and resiliently elastic, the strip of pre-cut kinesiology tape comprising a weave of fibers, at least some of the weave of fibers comprising an elastic fiber;

an adhesive on a surface of the strip of pre-cut kinesiology tape, the adhesive applied in a step frequency pattern including a plurality of steps along a longitudinal length of the strip of pre-cut kinesiology tape, **the step frequency pattern including the adhesive applied in a modified sine wave pattern** including a series of adhesive lines and gaps, the modified sine wave pattern including upper peaks with a higher amplitude

28

and sharper peaks relative to a baseline of a sine wave, the modified sine wave pattern including lower peaks with a higher amplitude and sharper peaks relative to the baseline of the sine wave;

wherein the adhesive is configured to adhere the strip of pre-cut kinesiology tape to a human body; and

a backing material covering the adhesive on the strip of pre-cut kinesiology tape, wherein the backing material is configured to protect the adhesive from drying until a user is ready to apply the strip of pre-cut kinesiology tape to the human body.

55.     Each of the independent claims in the '115 Patent claim include, among other limitations, a "modified sine wave pattern." *See e.g.*, '115 Patent (Claim 1). The modified sine wave pattern is also described in the specification, providing purported functional benefits:

FIGS. 3A and 3B show that the **adhesive pattern 300** can include a step frequency pattern. In at least one implementation, a step-frequency pattern can **include the adhesive applied in a modified sine wave pattern**. For example, the adhesive pattern 300 includes a wave with the upper peaks (as shown in FIG. 3) modified to include a higher amplitude that includes a sharper peak. . . . In at least one implementation, the adhesive pattern 300 can provide greater adhesion for the kinesiology tape. For example, the adhesive pattern 300 can provide adhesion even with lateral movement of the kinesiology tape relative to the user's skin. In particular, the adhesive pattern 300 can provide resistance to lateral movement of the kinesiology tape in any direction on the user's skin . . . such resistance can allow the kinesiology tape to better provide benefits to the user during use.

*Id.* at 6:28-46 (emphasis added).

56.     Moreover, the specification provides that the modified sine wave pattern "can provide resistance to lateral movement of the kinesiology tape in any direction on the user's skin . . . such resistance can allow the kinesiology tape to better provide benefits to the user during use." *Id*. at 6:38-46.

57.     During prosecution of the application that issued as the '115 Patent, the applicant made an express amendment concerning the step wave pattern or modified sine wave pattern.

58.    Mueller has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '115 Patent, either literally or under the doctrine of equivalents. For example, at a minimum, Mueller's Products do not exhibit "a modified sine wave pattern." (*See* Ex. A, at 10-24, '115 Patent, at Claim 1).

59.    Even assuming arguendo that every claim of the '115 Patent is valid, because the "modified sine wave pattern" limitation is in each and every claim of the '115 Patent—and because, at least, this limitation does not exist in Mueller's Products—Mueller cannot infringe any claim of the '115 Patent.

**V.     Examples of Third-Party Kinesiology Tape Products and Packaging**

60.    A wide variety of third party companies sell kinesiology tape in a wide variety of different colors, including beige.  Companies including Kinesio, TheraBand, Leukotape, Sparthos, Physix, Hampton, OK Tape, Therapist's Choice, RockTape, GripIt, SpiderTech, and Mighty-X sell beige kinesiology tape.

61.    Numerous third party companies in the United States marketplace sell kinesiology tape in rectangular product boxes with similar dimensions as the purported trade dress asserted by KT Health, and containing features including (1) an image of an athlete in athletic clothing wearing kinesiology tape, (2) a front upward-extending flap, (3) cut-out windows displaying the tape, and (4) side panels with text about the products.  Each of these companies prominently display the company or brand name on the packaging so that consumers can identify the source of the product.  For example, third party companies Kinesio and Curad each sell kinesiology tape in packaging containing each of the abovementioned features, as shown below:

| Company and Product | Packaging |
|---|---|
| Kinesio Tex Performance+ (Beige) |  |

| Company and Product | Packaging |
|---|---|
| Curad Performance Series Kinesiology Tape |  |

(*See* https://kinesiotape.com/kinesio-tex-performance-2-beige/ (visited July 2, 2020);

http://curad.com/product/performance-series-kinesiology-tape-black-2x10-strips/ (visited July 2,

2020).

62.     A variety of third party companies sell pre-cut kinesiology tape with round

corners, a wave pattern, and displaying source-identifying text or symbols on the tape itself,

including Kinesio, RockTape, OK Tape, and TheraBand.

## VI.    KT Health's Cease and Desist Letter to Mueller

63.     On or about June 12, 2010, Mueller received the Cease and Desist Letter from KT

Health. (Ex. A).

64.     In the Cease and Desist Letter, KT Health asserted that Mueller inappropriately

incorporated KT Health's purported trade dress for packaging for KT Health's kinesiology tape

products into Mueller's kinesiology tape packaging.  KT Health asserted that Mueller's

kinesiology tape packaging "constitutes trade dress infringement under the Lanham Act," and

that the claimed infringement was "purposeful."  (Ex. A, at 2).

65.     As **Exhibit A** to the Cease and Desist Letter, KT Health attached examples of the claimed incorporation by Mueller of KT Health's purported packaging trade dress into Mueller's kinesiology tape packaging.  (Ex. A, at 5-8).  KT Health described its alleged packaging trade dress features of its kinesiology tape product packaging broadly and vaguely as having "many design elements which, both individually and collectively, create an overall visual impression to inform customers that KT Health is the source of the goods."  (Ex. A, at 2).  The design elements KT Health cited included (i) a rectangular box shape with cut-out corners for displaying the tape, (ii) standard kinesiology tape product box dimensions, (iii) a box color scheme including orange as the primary color, (iv) use of vertical and horizontal text in colors including white, (v) inclusion of an athlete's picture and signature on the front of the box, (vi) use of the generic term "kinesiology therapeutic tape" on the box, and (vii) references to a URL and social media icons on the side of the box.  (Ex. A, at 5-8).

66.     KT Health also attached examples claiming incorporation by Mueller of KT Health's purported product trade dress into Mueller's kinesiology tape product.  (Ex. A, at 5-8). KT health broadly identified the alleged product trade dress as kinesiology tape with (i) rounded corners, (ii) the brand name or logo included on one end of a strip of kinesiology tape, (iii) standard size, length, and shape for each strip, (iv) a wave pattern on the back of each strip, and (v) a cylindrical-shaped container matching the color of the tape.

67.     The Cease and Desist Letter is false, deceptive and/or misleading.  For example:

   a.  The Cease and Desist Letter states that "Mueller copied the color scheme of an orange background" (Ex. A, at 6), when in fact Mueller's package is red and contains no orange anywhere on the package.

33

b.  Upon information and belief, the Cease and Desist Letter presents certain KT Health packaging that KT Health does not sell in United States commerce (the "Alternate Packaging)."  The Alternate Packaging appears below:



(*See* Ex. A, at 6).

The Alternate Packaging contains lower-right-corner cut-out windows, whereas the KT Health packaging images appearing below the Alternate Packaging in Exhibit A do not contain lower-right-corner cut-out windows, as shown below:



(*See id*.).

Upon information and belief, KT Health does not sell any kinesiology tape in packages containing lower-right-corner cut-out windows as depicted in the Alternate Packaging.

c.  The Cease and Desist Letter suggests that Mueller's "TYPHOON® Elite Kinesiology Therapeutic Tape – Beige" packaging and product incorporates

elements of the purported trade dress for KT Health's KT Tape Pro® packaging

and product.  (Ex. A, at 2) (citing **Exhibit A** to Cease and Desist Letter).

68.     KT Health attached a chart to the Cease and Desist Letter, purportedly to illustrate

and compare similar elements of a KT Tape Pro® package and kinesiology tape product that KT

Health alleges are contained in Mueller's product and packaging.  (Ex. A, at 5-8)  However, in

fact, the chart shows images of *multiple different* KT Health product packages.  (*Id*.)  For

example, the chart shows:

(1) a KT Health product package *with* a cut-out bottom right corner, and another KT

     Health product package *without* a cut-out bottom right corner:

; and

(2) a KT Health product package *containing* the words "100% synthetic" under the

     vertical word "Pro" on the left side of the front of the package, and another KT

     Health product package *without* the words "100% synthetic" in that location:



(*Id*. at 5-8).

69.    KT Health's KT Tape Pro® purported packaging trade dress does not serve a source-identification function.  Rather, the source of the product is prominently displayed on the front of the packaging, which denotes "KT TAPE" in the largest font on the packaging.

70.    The Mueller Design differs from KT Health's purported trade dress, and both the Mueller Design and KT Health's purported trade dress prominently display the name of the source of the respective products.

71.    For example, the Mueller Design prominently displays the MUELLER standard character trademark, the Mueller Design Mark, and the TYPHOON mark, whereas KT Health's purported trade dress prominently displays the KT TAPE and KT TAPE PRO trademarks.  The primary color of the packaging for the Mueller Design is red, whereas KT Health's purported trade dress is orange.  The Mueller Design includes professional soccer player Alex Morgan's signature endorsing the product in the *upper-right* corner of the front face of the packaging, whereas the signature of the professional beach volleyball player Kerri Walsh Jennings endorsing the KT Health product is located in the *lower-left* corner of the packaging at issue. The end of each strip of Mueller TYPHOON® Elite Kinesiology Tape denotes the source of the

product by displaying (1) the MUELLER standard character trademark and (2) Mueller's Design Mark, whereas KT Health's purported product trade dress simply displays the initials "KT." Moreover, the lid for each container of Mueller TYPHOON® Elite Kinesiology Tape prominently denotes the source of the product by displaying (1) the MUELLER standard character trademark and (2) Mueller's Design Mark, whereas the purported KT Health trade dress simply shows the initials KT on the lid for each container.

72.     Notably, the '115 Patent expressly claims a modified sine step wave pattern on kinesiology tape as a functional feature; therefore, as matter of law the wave pattern cannot constitute KT Health's trade dress because it is functional.

73.     KT Health's Cease and Desist Letter states that KT Health "is preparing to begin legal action" against Mueller, and that if Mueller does not respond to the Cease and Desist Letter within a specified period "KT Health will promptly file and serve its Complaint."  (Ex. A, at 2-3).

**VII.     KT Health's Failure to Comply with Wisconsin's Patent Notification Statute**

74.     The Cease and Desist Letter identified KT Health's patent and thus threatened patent infringement, constituting a "patent notification" under Wisconsin's Patent Notification Statute, Wis. Stat. § 100.197.

75.     In the Cease and Desist Letter, KT Health intended to represent or suggest that Mueller's Products practice KT Health's '115 Patent.  Specifically, KT Health stated that "[i]n light of its rights in the '115 Patent, KT Health requests that Mueller avoid any incorporation of the patented subject matter into Mueller's kinesiology tape products."  (Ex. A, at 2).

76.     In the subsequent paragraph of KT Health's Cease and Desist Letter, KT Health stated that it was preparing to file a complaint against Mueller.  (*Id*., at 2-3).

77.    Mueller does not infringe the '115 Patent.  At a minimum, Mueller's Products do not practice the stepped "modified sine wave pattern" limitation.  There is no objectively reasonable basis for KT Health to have identified the '115 Patent in the Cease and Desist Letter to Mueller. [1]  KT Health's Cease and Desist Letter is false, misleading, and/or deceptive at a minimum in that it is intended to suggest that KT Health has a reasonable basis to believe that Mueller's products may be covered by one or more claims of the patent when it is apparent that Mueller's products do not contain at least one element that is required by each and every claim of the '115 Patent.

78.    Specifically, KT Health's Cease and Desist Letter is false, deceptive and/or misleading in either of the two possible scenarios in which it was sent.

79.    First, if KT Health sent the Cease and Desist letter to Mueller without performing a good faith analysis to support its allegations concerning the '115 Patent, KT Health's Cease and Desist Letter is false, misleading and/or deceptive because KT Health did not undertake a proper infringement analysis to substantiate its claim for patent infringement.  Unsubstantiated infringement claims make the Cease and Desist Letter false, misleading, and deceptive because KT Health had no grounds for believing that the patent infringement claim was true when sent.

80.    Second, in the alternative scenario, had KT Health undertaken a proper infringement analysis, it would have been apparent that at least the "modified sine wave pattern" limitation is not present in Mueller's Products, and thus, Mueller's Products do not infringe the '115 Patent in which case KT Health would not have made reference to the '115 Patent in its Letter.  For example, KT Health has intentionally decided not to provide specific claims asserted

---

[1] Wisconsin Stat. § 100.197(1)(a) (defining "Patent notification" as meaning "a letter, e-mail, or other written communication attempting in any manner to enforce or assert rights in connection with a patent or pending patent").

against Mueller's Products (i.e. the target products); nor provide factual allegations supporting its patent infringement assertions.  Upon information and belief, KT Health knows that Mueller's Products do not infringe the'115 Patent—yet decided to send the Cease and Desist Letter knowing of its underlying falsities.

81.    KT Health's Cease and Desist Letter also is false, deceptive and/or misleading with respect to KT Health's enforcement efforts arising from KT Health's purported trade dress in its kinesiology tape products and packaging.  For example, KT Health asserts trade dress rights in legally functional packaging that is common amongst the many competitors in the kinesiology tape industry and has no source-identifying element.  KT Health also falsely claims that Mueller's TYPHOON® Elite Kinesiology Therapeutic Tape packaging is primarily orange when it is in fact primarily red, in order to try claiming that Mueller's packaging color infringes one of the many different kinesiology tape box colors used by KT Health.

82.    As shown by the factual allegations in this Complaint, KT Health's purported trade dress and patent enforcement efforts against Mueller objectively are baseless and meritless and constitute a sham, and KT Health subjectively knew such efforts constitute a sham when sending the Cease and Desist Letter to Mueller.  KT Health cannot reasonably or realistically expect success on the merits in its purported trade dress and patent enforcement efforts against Mueller, as KT Health lacks probable cause to institute litigation against Mueller for the reasons discussed in this Complaint's factual and legal allegations bearing on non-infringement and invalidity of KT Health's purported trade dress and patent rights.  Moreover, KT Health's enforcement efforts demonstrate its subjective intent to interfere with Mueller's business and relationship with retailers such as Walmart and Kroger.

83.     Consequently, whether KT Health undertook reasonable steps to identify the grounds for which it could assert its '115 Patent, or intentionally decided not to undertake that analysis before sending its Cease and Desist Letter, the Cease and Desist Letter is false, deceptive and/or misleading.

84.     Mueller is a target or other person aggrieved based on the falsities directed at Mueller's products.  Mueller is entitled to enforce an action against KT Health because the Cease and Desist Letter constitutes a patent notification containing false, misleading, and/or deceptive information.

## Count I

### (Declaratory Judgment of Invalidity of KT Health's Purported Trade Dress)

85.     Mueller re-alleges Paragraphs 1 through 84 as if fully set forth herein.

86.     Upon information and belief, KT Health does not own any federal or state trade dress registrations for the KT Health's kinesiology tape product and product packaging trade dress at issue.

87.     KT Health's purported trade dress does not constitute valid trade dress.

88.     KT Health's purported trade dress is not inherently distinctive.

89.     KT Health's purported trade dress lacks secondary meaning.

90.     KT Health's purported trade dress is generic.

91.     KT Health's purported KT TAPE trademark is generic.

92.     KT Health's purported trade dress is functional.

93.     KT Health's purported trade dress does not distinguish KT Health's kinesiology tape products from those manufactured or sold by others, or indicate the source of KT Health's kinesiology tape products.

94.     Mueller therefore seeks and is entitled to a declaration that KT Health's purported trade dress does not constitute valid and protectable trade dress, under either the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., or the common law.

## Count II

### (Declaratory Judgment of Non-Infringement of KT Health's Trademarks)

95.     Mueller re-alleges Paragraphs 1 through 94 as if fully set forth herein.

96.     Upon information and belief, KT Health does not own any trade dress registrations for the KT Health kinesiology tape product and product packaging trade dress at issue, and therefore, any claims for trade dress infringement brought by KT Health are not based on any federal or state trade dress registrations.  KT Health's purported trade dress does not constitute valid trade dress.

97.     Mueller's TYPHOON® brand kinesiology tape products and product packaging do not infringe any trade dress rights purportedly owned by KT Health, and therefore, Mueller intends to continue selling TYPHOON® brand kinesiology tape products in its current packaging and with the current design.

98.     Mueller's actions do not constitute trademark infringement or trade dress infringement because Mueller's kinesiology tape products and packaging are not likely to cause consumer confusion, mistake, or deception as to the source, origin, sponsorship, or approval of KT Health and KT Health's kinesiology tape products and packaging.

99.      Mueller therefore seeks and is entitled to a declaration that Mueller is not liable for trademark infringement of KT Health's trademarks or trade dress, under either the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., Wis. Stat. Ch. 132, any other state trademark infringement statutes, or the common law.

## Count III

### (Declaratory Judgment of No Unfair Competition by Mueller)

100.    Mueller re-alleges Paragraphs 1 through 99 as if fully set forth herein.

101.    Mueller's adoption and use of the Mueller Design does not violate any prohibition against unfair competition against KT Health, including under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., Wis. Stat. § 100.20, any related or similar statutes in other states, or the common law.

102.    Mueller therefore seeks and is entitled to a declaration that it has not engaged in unfair competition.

## Count IV

### (Declaratory Judgment of No Deceptive Trade Practices by Mueller)

103.    Mueller re-alleges Paragraphs 1 through 102 as if fully set forth herein.

104.    Mueller's adoption and use of the Mueller Design does not violate any prohibition against deceptive trade practices against KT Health, including under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., Wis. Stat. § 100.20, any related or similar statutes in other states, or the common law.

105.    Mueller therefore seeks and is entitled to a declaration that it has not engaged in any deceptive trade practice.

## Count V

### (Declaratory Judgment of Non-Infringement of KT Health's Patent - 28 U.S.C. § 2201; 35 U.S.C. § 271)

106.    Mueller re-alleges Paragraphs 1 through 105 as if fully set forth herein.

107.    KT Health sent Mueller a Cease and Desist Letter identifying the '115 Patent to state or imply that Mueller's products infringe the '115 Patent.

108.    An actual case and controversy exists between the parties regarding whether Mueller's Products infringe the '115 Patent.

109.    Every independent claim of the '115 Patent includes a "modified sine wave pattern" limitation.

110.    The dependent claims depend on at least one of the independent claims and, therefore, also include the "modified sine wave pattern" limitation.

111.    Mueller's Products do not practice each and every limitation of any claim of the '115 Patent.

112.    Mueller's Product do not include, for example, the "modified sine wave pattern" limitation.

113.    Mueller's Products do not infringe any claim of the '115 Patent, thus warranting a declaratory judgement of non-infringement.

## **Count VI**

### **(Wisconsin Patent Notification Statute – Wis. Stat. § 100.197)**

114.    Mueller re-alleges Paragraphs 1 through 113 as if fully set forth herein.

115.    KT Health sent the Cease and Desist Letter as an apparent attempt to assert and/or enforce rights in connection with the '115 Patent.

116.    Mueller is a target pursuant to Wisconsin's Patent Notification Statute, Wis Stat. § 100.197, because it is a domestic corporation under Wisconsin Statutes § 801.05(1)(c) and was the recipient of KT Health's Cease and Desist Letter.

43

117.     The Cease and Desist Letter contains false, misleading, and deceptive information for at least the reasons alleged herein including that Mueller's Products do not practice the "modified sine wave pattern" limitation, and therefore, KT Health lacks any reasonable basis to assert rights in connection with '115 Patent against Mueller.

118.     KT Health violated Wis. Stat. § 100.197 when it sent the Cease and Desist Letter to Mueller because the Cease and Desist Letter is false, misleading and/or deceptive.

119.     Mueller is entitled to compensatory damages, recovery of its costs and attorneys' fees, and punitive damages of $50,000 for each violation or 3 times the aggregate amount awarded for all violations of Wisconsin's Patent Notification Statute, whichever amount is greater, pursuant to Wis. Stat. § 100.197(3)(b).

### Count VII

### (Intentional Interference with Contractual Relations)

120.     Mueller re-alleges Paragraphs 1 through 119 as if fully set forth herein.

121.     KT Health had knowledge of Mueller's contractual relationship with Walmart.

122.     KT Health intentionally interfered with this relationship, including by sending the Cease and Desist Letter to Mueller and by filing suit against Walmart.

123.     As a result of KT Health's intentional interference, Mueller has been damaged.

124.     A causal connection exists between KT Health's interference and the damages suffered by Mueller.

125.     KT Health was not justified or privileged to interfere with the contractual relationship between Mueller and Walmart.

126.    Mueller seeks and is entitled to compensatory damages for KT Health's intentional interference with Mueller's contractual relationship with Walmart, including in violation of Wisconsin law.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Mueller, prays this Court for an order:

A.    Declaring that KT Health's purported trade dress does not constitute valid and protectable trade dress, under either the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., the Wisconsin Statutes, any other state trademark statutes, or the common law.

B.    Declaring that Mueller is not liable to KT Health for infringement of KT Health's purported trademarks or trade dress rights, under either the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., Wis. Stat. Ch. 132, any other state trademark infringement statutes, or the common law, for any features, including but not limited to the following:

a.    The color of KT Health's kinesiology tape product packaging;

b.    The shape of KT Health's kinesiology tape product packaging;

c.    The dimensions of KT Health's kinesiology tape product packaging;

d.    The fonts used on KT Health's kinesiology tape product packaging;

e.    The text used on KT Health's kinesiology tape product packaging;

f.    The social media icons used on KT Health's kinesiology tape product packaging;

g.    The picture of an endorsing athlete wearing kinesiology tape appearing on KT Health's kinesiology tape product packaging, along with the signature of the athlete providing the endorsement;

h.    The use of rounded corners on KT Health's kinesiology tape products;

i.  The inclusion of a trademark on one end of each strip of KT Health's kinesiology tape;

j.  The size, length, and shape of KT Health's kinesiology tape strips;

k.  The wave pattern on the back of KT Health's kinesiology tape strips;

l.  The cylindrical-shaped container of KT Health's kinesiology tape container;

m.  The shape of the lid or bottom of KT Health's kinesiology tape container;

n.  The color of the container and lid of KT Health's kinesiology tape container;

o.  The color of KT Health's kinesiology tape strips; and

p.  Any other aspect of the packaging or product trade dress for KT Health's kinesiology tape.

C.  Declaring that Mueller is not liable to KT Health for unfair competition, including under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., Wis. Stat. § 100.20, any related or similar statutes in other states, or the common law.

D.  Declaring that Mueller is not liable to KT Health for deceptive trade practices, including under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., Wis. Stat. § 100.20, any related or similar statutes in other states, or the common law.

E.  Declaring that Mueller is not liable to KT Health for infringement of any of KT Health's utility patents or design patents, whether issued or pending;

F.  Declaring that KT violated Wisconsin's Patent Notification Statute, Wis. Stat. § 100.197, and that Mueller is entitled to an appropriate award for damages, including punitive damages, and attorneys' fees;

G.  Declaring that KT Health intentionally interfered with Mueller's contractual relationship with Walmart, including in violation of Wisconsin law;

46

H.      Awarding Mueller the attorneys' fees, costs, and expenses that it incurs

prosecuting this action; and

I.      Providing for any other and further relief that is just and proper.

Dated this 2nd day of July, 2020.

**MICHAEL BEST & FRIEDRICH LLP**


By:  *s/ S. Edward Sarskas*

---

S. Edward Sarskas, SBN 1025534
Thomas A. Agnello, SBN 1055633
790 N. Water Street, Suite 2500
Milwaukee, WI 53202
Phone:  414.271.6560
Fax:  414.277-0656
sesarskas@michaelbest.com
taagnello@michaelbest.com

Ben Roxborough
*Pro Hac Vice Application
Forthcoming*
Michael Best & Friedrich LLP
1776 Lincoln Street, Suite 1100
Denver, CO 80203
Phone: 720.240.9515
Fax:  877.398.5240
broxborough@michaelbest.com

Attorneys for
Mueller Sports Medicine, Inc.